May it please the court, my name is Vicki Dobrin and I represent the petitioner Ms. Alvarez. I'd like to reserve two minutes for rebuttal. In assessing whether Ms. Alvarez more likely than not faces torture in El Salvador, the agency was required to consider all relevant factors. By regulation that includes, but is not limited to, whether she suffered past torture, whether she could safely relocate in El Salvador, whether there are gross or flagrant human rights violations in El Salvador, and all other relevant evidence regarding country conditions. In this case, neither the IAJ nor the board considered all of those factors. What didn't they consider? They focused almost entirely on whether the past harm rose to the level of torture and whether it was done by or with the acquiescence of a public official. So what evidence, what evidence of future torture should they have considered? Well the most significant evidence was the testimony of the expert, Professor Vanden. He testified at length regarding the torture, that the likelihood that she would be tortured and killed. They didn't consider that at all. If we, if we were to credit Professor Vanden's testimony alone as evidence of future torture, would that mean that all members of MS-13 who seek to leave the gang would then be eligible to stay in the United States under CAT? Not necessarily. Why not? Well because each case has to be adjudicated on the record in that case, and so. Well if you're, but if you're going to Professor Vanden, he's not really talking so much about her, he's talking about things in generality, how things work in El Salvador. It's a very, very bad situation as everybody is willing to acknowledge. But if Professor Vanden is testifying as to conditions in El Salvador, wouldn't that apply to all potentially? And you know, he testified, and there's documentary evidence to support what he said, that former gang members or gang members cannot leave gangs. And if they try to, the only way out is by death. And I think that's, you know, well established in this record. And so if in other cases that evidence is before the court, then yes, that might make out a case for somebody else in her was targeted over. Okay, but now, but you told me what they didn't consider was future evidence, so now you want to go to the past evidence. Well, Your Honor, I do because they only considered the past harm in the context of whether it rose to the level of torture. They didn't consider it at all with regard to whether it was indicative of future torture she might suffer. So again, that was, that was an error under the regulations and this court's the petitioner there, he also didn't suffer what amounted to torture in Mexico, but he was threatened and some other things happened to him that weren't as egregious as what happened to Ms. Alvarez. Okay, so what past harm did the BIA not consider? Well, any of it, because they only focused on it with regard to whether it rose to the level of torture. So it didn't consider whether the fact that she was... They've stated the standard, they've cited modrigal, they've referred to consent or acquiescence of public officials. Right. So it looks like they have addressed that point. They only addressed it in the context of did the past harm rise to the level of torture and was it done by or with the acquiescence of a public official. And was there something else they were supposed to consider? They were supposed to consider the future and whether... Okay, but that would go to Mr., that would go to the expert Professor Vanden. That's true, it would go to the Professor Vanden, it would go to the country conditions evidence in the record that they didn't consider, the State Department report. And if so, if we were to consider just Professor Vanden and look only to evidence of future torture, then the question would be are all members of MS-13 who seek to leave the gang eligible for cat relief in the United States? Because if they're returned to El Salvador, they will likely be killed. If the record is the same record as in this case. The record, is that the record that you have or isn't it? Yes, I have that record. Then that is the argument that you're making, isn't it? If all of the records have the same evidence that we do, yes. The government had the opportunity to present rebutting evidence and they didn't do that in this case. So in the future, if Professor Vanden testifies in another case, the government certainly can put forward evidence to show that his testimony is not accurate. But they didn't do that here. In fact, the government elected not to cross-examine the expert at all. So, you know, there's nothing in the record that... Did the government elect not to cross-examine him based on the fact that we didn't have Barajas Romero on the books at the time? Your Honor, no, I don't believe that's the reason. I think the government just, he provided an expert declaration. But you would agree with me, wouldn't you, that Barajas strengthens it? And that's why... If we had Barajas Romero on the record at the time that this expert testified, then they would have known we were going to look at that and it would have been reasonable for them to do some cross-exam. Without Barajas, they didn't do anything. That's possible. I mean, it's hard for me to speculate on whether... I'm not trying to make you speculate, so I appreciate it. What did Barajas add to it? I mean, the primary focus there was that even if you're talking about rogue government officials, as long as they're acting as public officials, it's irrelevant that the country at issue has like a policy against corruption. One significant difference between Barajas in this case and Barajas in Madrigal was that the, was the torturers were police officers in that case. In Madrigal, yes. In Barajas. Well, in Barajas they were, it's just that they were, you know, off-duty. Right, but they were police officers. Right. That would satisfy the undercolor of law likely under a 1983 standard in our country. Right. I don't know that there's, it didn't, I mean, significantly add to what this court had previously said in Madrigal, but it just kind of reaffirmed it, maybe with clearer language, that it doesn't matter if the country at issue has taken steps to combat corruption or violence. What matters is how effective those efforts have been. And in this case, the agency only relied on the fact that their, you know, funding has been, you know, poured into El Salvador, some of which was to target gang activity, but there, they didn't at all consider the fact that none of those efforts have been effective. The State Department report came after those efforts, and it continued to document widespread corruption, you know, flagrant abuses of human rights, torture by government officials. It talks about, although gang members have been incarcerated, they continue to exert authority over the judicial system from inside prisons. And so, you know, none of the efforts that the government or that the IJ or board decided to, in this case, in terms of documentary evidence, have been effective. And so under Barajas-Romero, those are simply irrelevant. And they're also not relevant as to Ms. Alvarez in particular, because those kind of are, the discussion was really in general, you know, what has the government done to combat gang violence? But in her case, she's a former gang member, and so that makes her in a Salvador. Because the evidence in this case shows, as the expert testified, and there's documentary evidence that supports it, that the government, regardless of its efforts to root out corruption, they don't protect perceived gang members from gang violence. Is there any evidence in the record that police officers or other government officials in El Salvador would particularly look the other way with respect to Ms. Alvarez? Yes. I mean, they did it already in this case. That's the past. Right, and the past is relevant as to the future. So you have a couple of incidents in which the police came, and she says they came up late, but they just said they told him to get out of there. Right. So the past is relevant to the future, and this court has said that. Is there any evidence that the police knew that this was Ms. Alvarez, or that they're looking for Ms. Alvarez, or that Ms. Alvarez has somehow carried special disfavor with the government, so that officers in El Salvador would turn a particular blind eye when they saw Ms. Alvarez being sexually abused? There's no evidence that they're particularly, you know, angry at her, but that's not the standard here. The standard is, would a public official turn a blind eye? That brings us back to the point that what you're really arguing is, is that former gang members who are trying to escape a gang, that El Salvador will not be able to protect them. Definitely on this record, Your Honor, yes. It puts her into a class of people, but it is a class of people and not her in particular. It's a class of people, but it's her in particular as well, because of what has already happened to her. Because she was already targeted over the course of the year she was there. It's undisputed, she was beaten three times, sexually assaulted, threatened with death repeatedly, and then after she fled, the gang members went to her grandmother's home and said, we're waiting to kill her when she returns. They went to her cousin's home with weapons and threatened his family. So, you know, in her case, there's been, she's particularly been targeted by gangs, and she was also, the police, you know, regardless of exactly when they arrived at the scene of that second incident, what they said to her is highly relevant. They said, you know, I don't need to repeat it because it's in the record, but they were going to also beat her up if she didn't leave. So they clearly saw what happened. Her cousin was bleeding, his skull was fractured. They knew that this happened to her, and so they didn't do anything to protect her, and that's also relevant. Judge Priby, if I could, I know our time is gone. No, that's fine. I guess the biggest problem I have with it, with your particular argument, is my standard of review here. It seems to me that I can only reverse the BIA finding if I find the evidence not only supports a contrary conclusion, but compels it. So why is this record compel a contrary conclusion? So, for two reasons, Your Honor. First, because the expert's testimony compels that conclusion. And then that, you know, adding to that, her own past experiences and the extensive country conditions evidence in the record all compel that conclusion. But secondly, even if the court feels like it can't reach that question of whether the record compels the conclusion, at the very least it has to remand to the board, because the board didn't consider all of the relevant factors. And this court has said that in several cases that we've cited that, you know, it's reversible error, and in Cole it said if it doesn't consider dispositive evidence in a CAAT claim, it has to remand. If it doesn't consider all evidence of country conditions, it has to remand. So I think for that reason we prevail even if you can't find clear error. Thank you, Your Honors. Thank you, Ms. Dobrin. I will give you, I will give you time for rebuttal. Mr. Holt. Good morning. May it please the court, John Holt for the Attorney General. There's no abuse of discretion in the agency's determination that petitioners' robbery related to her MS-13 gang participation was conviction of a particular serious crime. Substantial evidence also supports the agency's decision that the CAAT deferral claim has no merit related to MS-13 misconduct in El Salvador. Let's take up that second issue first. Do you agree with me, first of all, that Alvarez and all of her witnesses are credible? The agency made that decision correct, yes, Your Honor. So once they are credible, then at that point I have to go forth, I have to go forth with the evidence that we've got here. She had past harm, which included beatings, attempted assault, death threats. The I.J. addressed the beatings, the sexual assault, but I never saw the I.J. address the death threats. Is that a problem? The I.J. considered all of the evidence. Well, but just a minute. I went right to the record and I see where the I.J. looked about the sexual assault, but I didn't see anything about the death threats. I'm looking at A.R. 95 through 99. Yes, but the agency... I mean, the BIA includes the threats in the assessment, but the problem, I guess, is I have to now determine whether she has met her burden of showing that she more than likely not be tortured if she's removed. And they don't say anything about death threats, and I'm saying that seems to me to be a problem. You focused on a fundamental flaw of Petitioner's brief and argument before the court. In her brief on page 26 and her reply brief on page 13 and 14, she asserts that the decision under Indeed, the board twice specifically said, we agree with the immigration judge's determination. You're missing my point. I looked at what the I.J. did, so I'm not listening to anything except what the I.J. did. I'm not looking just at the BIA, but the I.J. never addresses the death threats. Well, let me go to your next question. We now have had Barajas, Romero versus Lynch come down. Given that we've had Barajas, Romero versus Lynch come down, should I not give the BIA another chance to think about this given that case? If I'm just, I'll go there immediately, but I will say that the agency considered the death threats in the board decision. And so it's, the agency decision is both the decision of the board and the immigration judge, and the mere fact that the immigration judge considered all the evidence, we would say. We don't have a lot of time on that. Go ahead. In terms of Barajas, Romero, there are three points. First of all, as pointed out earlier, in Barajas, Romero, there was state action. Here, there was no state action. Petitioner never asserts that the police were involved in her abuse. In response to a question asked by a judge earlier, is there any evidence that shows that the police were not going to take advantage of her or get involved in any persecution? At page 160 and 161 of the that petitioner had tattoos, MS-13 tattoos, but they released her and said that, and let her go. If they were going to take advantage of her... Let me stop you just a minute. The BIA decision, as I understand it, I don't see where they clearly showed that they conducted an individual analysis of Alvarez's risk. The IJ identified documentary evidence that leaving a gang is very difficult and often results in death. The IJ noted that the reports indicate 90 percent of the homicides were related to the gang violence. Yet the BIA and the IJ, again, ignored the testimony that she'd received the multiple death threats. We would submit that, again, that goes back to the agency decision is both the board decision and the immigration judge's decision. That's a fundamental error in petitioner's argument. And so the board, three times before in its opinion, on pages five and six, state that the factual findings of the immigration judge are not clearly erroneous. Twice the board said, we agree with the immigration judge and the immigration judge correctly determined the attacks on petitioner while abhorrent do not make torture. So we would submit that the agency decision, when you look at both the immigration judge and the board decision, addresses all of the evidence with regard to petitioner's claim not only to pass but also future persecution. Petitioner argues that in terms of future persecution, first of all, that there's... She doesn't argue there's any state action. There's no evidence at all that anyone from El Salvador and a police authority... Well, we're not talking about state action here. We're talking about the failure to do anything about. In terms of the failure, petitioner argues that the... I mean, for instance, her true testimony shows that the police did not come to her aid and instead suggested that if her and her cousin did not leave, the officers would also beat them. That's an AR-238. And there was at least one instance where the officers were on the scene when the perpetrators were there, yet the officers didn't do anything to apprehend the gang members or help the victims. That's an AR-168. So isn't that much more significant behavior than Zin Garcia Millon versus Holder? It's not, Your Honor. And again, those observations assert a blind eye argument for petitioner. But it was petitioner's failure to focus the eye of the police on the MS-13 assailants that is the reason why she didn't get help. On page 173 of the record, she admits that she knew the name of the leader. She never disclosed it. On page 181, she gave the names of some of the people that were in the gang. She knew the and recognized some of the people. But she stated when the police came that she did not know who they were. She lied to the police when the police arrived to cover up for MS-13 colleagues that allegedly were abusing her and that mistreated her. So when she doesn't cooperate with police, she can't fault the police for not doing anything. So first of all, there was no state action. Secondly, no cooperation. And third, the agency fully considered all the evidence. First of all, they considered the evidence in terms of trying to solve the problem. The immigration judge on page 67 through 74 and 99 details the country evidence regarding the efforts made to counteract MS-13 in El Salvador. The board on page 5 and 6 similarly addresses that evidence. That included the training, the arrest, the corroboration, the collaboration with U.S. gang enforcement. Does it include any description of the effects of those efforts? It does. And indeed, the expert, Mr. Van Dan, conceded that over 10,000 gang members were imprisoned in El Salvador, that the government had tried to enforce the law. On page 271, the gang members were persecuted for murder. So in terms of Barajas Romero, there were three points. First of all, no state action. Secondly, the agency did not require, as in terms of a past persecution or past torture, they said we've got to look at the efficacy of a future torture, but there's no reason to remain in light of Barajas Romero, because here the agency did consider the efficacy efforts. Merely because a country has problems with MS-13, we have problems with MS-13, doesn't mean that there's a blind eye or that there's torture when MS-13 action is taken in a particular case. So we focus on the particular acts in terms of petitioner. In terms of past persecution, there was never any medical treatment. We don't deny her credible testimony that on three incidents she was attacked, but those circumstances alone do not establish that it relate to the level of severe pain and torture to amount to torture. In terms of the particular serious crime argument, I think the important point is that the agency did accurately state the law. Petitioner only asserted one page of her brief and none of her argument to the agency determination that this was particularly serious crime, and so therefore she's not entitled to asylum or withholding or removal. The important point in that regard is both the board and the immigration judge noted she was 16 years old and that she was young when this particular matter happened. Finally, in terms of ineffective assistance of counsel, the important point is the petitioner did not cooperate with her lawyer. She didn't show up for a meeting before, she didn't show up the day of the proceeding until late. The court seems focused on whether or not there was torture. There was no... Well, frankly, I seem focused on that because it seems to me that I'm now at the point where I have to have substantial evidence supporting the determination that Alvarez failed to establish this. And for me, the record was pretty clear that despite police officers' request to arrive on the scene while Alvarez was being beaten, they didn't do anything to stop the incident and further threatened her. And I said to myself, that doesn't seem logical. And that's why I ask you the questions that I did. I appreciate that, Your Honor. May I just respond? Yes. The important point in that regard is it was petitioner's own words where she admitted that she covered up and lied for her fellow MS-13 gang members that precluded the police from taking any action to protect her. Secondly, in terms of the threats, there was never any indication that petitioner indicated that death threats were imminent. And that is the standard. You, in your earlier question, stated that your concern is the standard of review. That is the linchpin to this case, the standard of review. Well, if the I.J. and the B.I. don't agree with you that the B.I. addressed the death of Petitioner Lee, it would seem to me your argument would be stronger. But that's just me. Well, again, my time is up. Thank you for answering the question. Yes. We would say that the board identified the evidence and all of the circumstances. And the most important point in that regard is the board focused on petitioner's failure to cooperate with the police and identify the gang members that assaulted her. She lied about it. She covered up. She stated she didn't recognize them when she admitted that she knew their names. And so she doesn't come before the court with clean hands in that regard. And we think that that is what thwarted, in that particular circumstance, the El Salvador police from providing some assistance. Thank you, Your Honor. Thank you, Mr. Holt. Ms. Dahlgren, we'll give you time. Thank you, Your Honors. I mean, just to point out a few things that we already talked about. As Your Honor pointed out, the agency didn't consider the death threats at all. I mean, I just reread the board's decision. They don't mention that at all. Ms. Alvarez did not admit to lying and covering up for her fellow gang members. That's a complete misstatement of the record. What she said was that she recognized them, she didn't know who they were, and that she was afraid to tell the police after the first incident because she was afraid of further harm. And that was understandable given the evidence in the record that witnesses against gangs are routinely killed. And this is even mentioned in the State Department report. And as to the second incident, I think I'm restating what Your Honor already pointed out. The police were definitely on the scene. They knew she was beaten. Whether or not she provided the name, she wasn't asked for that information. She was told that if she didn't leave, she was going to be beaten by the police. So it's just simply not the case that she could have provided information. The police had an obligation. They saw two people being viciously beaten, and they did nothing about it. They told them to leave, or they would beat them as well. So I think that's highly relevant to the likelihood of future harm that she would face. And so regardless of the extent to which they acquiesce, it's indicative of what would happen in the future. And so for those reasons and for all the other reasons, she should prevail. Thank you. Thank you. We thank both counsel for the argument. The case is submitted.
judges: Bybee, N.R. Smith, Antoon